May it please the Court, the United States requests that this Court vacate the writ of mandamus issued by the Trade Court directing Commerce to issue anti-dumping order outside of the regular statutory scheme that Congress implemented for the issuance of the orders. Didn't this Court decide the merits in July and so has the order, is this case moot now? No, it is not, Your Honor. Today is the deadline for any parties to seek cert in that opinion of the Court. We have not received a notice, the ITC hasn't issued it yet. They have to wait until the 90 days for cert expires. We anticipate receiving that order or that notice within the next 7 to 10 days at which time Commerce has to act pursuant to 19 U.S.A. 1673 E.A. and issue the anti-dumping orders. So it's moot in 10 days? No, it's not mooted in 10 days. We could have two anti-dumping orders in the books at the end of this process because Commerce has no authority to revoke the Court-imposed anti-dumping order. We are under the threat of contempt if we touch that order. But the orders will be identical, correct? Not with the starting dates. But going forward, the situation would not change whether this Court affirmed or reversed in any practical sense other than that this one of the two orders would evaporate into the either. No, Your Honor. How would there be a practical difference on the assumption that no one seeks cert? Okay, the practical difference is that the statutory scheme that is implemented by the issuance of an anti-dumping order takes effect on the date that the order is issued. We have had for the past year... Let me see. I think I understand what you're saying. What you're saying is that as far as the future is concerned, the two orders are identical. But if the mandamus-imposed order is sustained, that will mean that the cash deposits that were taken pursuant to that order will be available in the liquidation. Whereas if a new order were issued, that it would become effective only prospectively. Is that... Am I understanding that correctly? Partially, yes. If a new order... If the Court vacates the anti-dumping order that the trade court imposed, the Commerce would retract those orders, refund the cash deposits. There's no way... You're saying if that order is reversed that the cash deposits can be reached. Well, the cash deposits, they would have to be refunded. And then we would start again with the new order. But the practical effect of the revocation of the order is also that all administrative reviews that have been ongoing to date would be cancelled. They have to stop them. We've had administrative reviews going on for the past six months. New shipper reviews. We have had reviews dealing with... Sorry. Scope reviews, new shipper reviews, and administrative reviews pursuant to the anti-dumping order that the Court issued are scheduled to begin in November. The issuance of the new order under statute would set the yearly administrative reviews a year from the issuance of the new order and would put an end to the ongoing administrative reviews that have been taking place until now. There was no clear duty by Commerce to act as the trade court directed it to act. There is no statute, no regulation. Well, wait. I have a hard time with that. Because it seems to me, first of all, that the Court of International Trade was mistaken in one respect. And I'm just telling you what my view is. And that is that its decision approving the remand order is not the right event to focus on. The right event to focus on is whether the issuance of the decision on remand by the International Trade Commission effectively was an order that itself was a final order. You understand what I'm saying? Yes, Your Honor. And it strikes me in reading the statute that the statute seems to say that it is a final order. In fact, in normal circumstances where there's an order issued by the International Trade Commission finding material injury or threat of material injury, that becomes effective immediately. Commerce, it's published in the Federal Register, Commerce implements it, issues an anti-dumping order, and there's a collection of cash deposits, correct? Well, yes. But what we have to look at is, what is it that triggers Commerce statutory duty to issue an anti-dumping order? Because we understand that the trade court commingled the ITC's case with Commerce's case in issuing the writ of mandamus. But here, we look purely at what Commerce statutory duty is. And Commerce's statutory duty to issue an order derives from section 1673EA. And only after being notified by the ITC of an affirmative determination does Commerce's obligation to issue. So the mandamus requires the notification, requires the publication in the Federal Register. Why isn't that correct? Well, the mandamus didn't require publication in the Federal Register. But it did. No, no. The Timken notice was issued in response to the trade court's decision not in harmony. And that trade court decision is what this court has addressed on the appeal. Suppose the remand determination had been published in the Federal Register. Do you agree that that would be a final determination that would require the collection of cash deposits? Well, no, Your Honor. Why not? The remand determination is on appeal. So why not? The collection of cash deposits is triggered by the anti-dumping order that was published. Well, suppose they issued on remand a final order. It was published. The notification took place. Why wouldn't they have to implement that by collecting the cash deposits? Because what triggers Commerce's duty to publish the anti-dumping order and collect cash deposits is a notice of an affirmative determination under section 1673EA. That is the only statute. Congress has spoken clearly about this and plainly. And the trade court ignored it. I don't think you're answering my question. My question is, if on the remand determination, Commerce did all the things published in the Federal Register provided notice, wouldn't they have to collect the cash deposits, even though there was an appeal pending? No, Your Honor. Why not? Because the opinion is not a final and conclusive. And this court, in looking at and interpreting section 1516A. What section of the statute says they don't have to act? Section 1516A says that all Commerce has to do is publish a notice of a decision not in harmony, suspend liquidation, and wait for a final and conclusive court opinion in the matter. And once the ITC provides notice. But that section's dealing with liquidation, not with collection of cash deposits. Well, we look at the way that the statute has been interpreted by this court. And this court's interpretation of that statute, every single time it has interpreted it, is that the administrative handling of entries should not be altered by trade court decisions. Suppose we say 1516A is limited to liquidation. Do you lose then? No, we do not lose, because we still have to look at whether there was a clear duty for Commerce to act as a trade court directed it to act. And the trade court's opinion created the duty in the first instance, disregarded the plain language of the statute, and then imposed. Which plain language? Of what statute? 1673EA. That is what triggers Commerce's obligation to publish the anti-dumping orders, and to collect the cash deposits, and to give full effect to the decision of the court. Let me see if I understand. I'm having the same difficulty that Judge Dyck is in understanding exactly what the statutory language that you're relying on is. Because there are several different connected statutory provisions. And let me make sure I understand how you're reading each of these connected provisions. First of all, with respect now to the ITC's obligations, 1673D, when the administrating officers or the commission makes a determination under this section. Now, are you reading determination in that case to mean the ITC's own decision, or a final order in the entire case? The ITC's own decision. OK. So at that point, the IT is supposed to inform the Commerce Department of the petition, right, of its decision, of its determination. Yes. Right. Now, why isn't that the determination that under 1673EA is made by the commission of an affirmative determination that imposes on commerce the duty to issue an ID dumping order within seven days? Because we have to read all the statutes. The language. That is a determination, right? And if they advise you of that determination, what is it about 1673A that isn't satisfied? What language from you, you've evoked the specific language of the statute, what language of 1673EA is not satisfied by my scenario? Because the court scenario is premised on there having been a notification for 1673D. No, no, I am premising on that. I'm saying if there is a notification from the ITC that they've made a determination, do you have an obligation to act within seven days? Yes, of an affirmative determination. Of a determination, not a final order at the end of all the litigation, correct? Well, no, because 1516AC kicks in, Your Honor. And 1516AC is the provision that applies to cases that are in litigation and that get remanded. So they have to be read together. And in harmony with each other. And under 1516AC, what Congress has said is, when there is a case at the trade court that gets remanded, or when a trade court issues a decision that is not in harmony with the agency's original determination, then commerce must wait. Sorry, commerce must wait until there is a notification from the ITC of a final and conclusive court opinion and the issuance of the affirmative, of the notice of affirmative determination by the ITC. They have to be read together. And that is how this court has interpreted it since 1984. Otherwise, we would be in a situation where- Didn't we have to decide this question before? Well, we look at the totality of what the case has done in its jurisprudence, beginning in 1984 with Melamine, and the safeguards that the court has put in place in interpreting 1516A. Well, why couldn't you just solve this problem by doing this? When the CIT, the Court of International Trade, remanded to the ITC to reconsider, the court didn't tell you what to do. It said reconsider. Why didn't the ITC, in its order, say, this is a contingent order. This order will become effective at the conclusion of judicial review. We still believe that the remand was improper, and here's what we would do if the Court of International Trade decision were sustained. We don't represent the ITC, Your Honor, and we have to go on what Commerce received. And what Commerce received- But you gotta speak for the ITC, too, because what I'm asking you is, isn't that the solution? If the ITC thought that it was issuing a contingent decision that wouldn't become effective until the appeal process was completed, why didn't the ITC say that? Commerce, well, the ITC issued a notice of a decision not in harmony, and Commerce published its Timken notice. You're not responding to my question. My question is, if the ITC thought its decision was being compelled by the Court of International Trade, that the decision of the Court of International Trade was wrong, and that it wanted to continue to contest that, why didn't it simply say, this is a contingent order that is dependent on the outcome of the appeals process? Well, the Timken notice said that. The Timken notice that Commerce published, that is the effect of the Timken notice, to advise the public- Well, where's the language that this order is contingent? I didn't see, I read the order. The order on its face looks like a final order. The Timken notice? ITC order. The ITC order? On its face looks like a final order, doesn't it? The ITC order, you mean the ITC order on the- On the remand. Looks like a final order, right? It is, and it's a new determination. It's a determination. It looks like an ordinary final order, right? Yes, Your Honor. So if you want it to be something else, why didn't the ITC say that? Well, the ITC, once the court affirmed it, that's when 1516A kicks in, and it becomes a decision not in harm's way. Isn't the answer, I don't know the ITC's own rules, but I would suppose that it may be the case that the ITC just doesn't have a procedure in place for doing the kind of thing that Judge Dyke suggests, even though they may be well advised to devise such a procedure, because that would seem to cut through the Gordian knot here. I am not aware of any regulation or statute to provide for the process that Judge Dyke is suggesting. Could they do it? By regulation or statute? No, it's not available. As a decisional matter, say that this case is on appeal. We continue to contest the permissibility of the remand. We're issuing this order under compulsion, but if this is contingent on our losing the appeals process. We have a statute, 1516A, that speaks. Could they do that? Not by statute. And there's a statute that contradicts that, that it's completely contrary to what the court is suggesting. What statute? 1516A limits the effect of a decision not in harmony to a Timken notice, to the publication of a Timken notice, to simply publicizing. We read that provision as dealing only with liquidation. You lose, right? Well, no, because that provision, there's one section of that provision that deals with liquidation, but there's another section that deals with what are the parties to do when there's a decision not in harmony issued by the trade court. And the directive of Congress is that the parties are to stay their hands, do nothing other than suspend liquidation. Which provision? It is 1516AE. That a final court decision in the action limits the statutory relief to that point. Liquidation in accordance with final decision? Yes. Well, suppose we say that's dealing only with liquidation. Well, but then we have to look also at the manner in which 1516A has been interpreted by this court. And in Timken, and in Hussein, and in Coseal Raritan, this court has spoken and interpreted 1516A to the plain meaning of that provision that the parties- You've consumed your full 15 minutes, but recognizing that you had agreed to share some couple of minutes with Mr. Weigel, and of course we asked you a lot of questions, we'll hear from Mr. Weigel who has two minutes and give you two minutes of rebuttal. Thank you, Your Honor. Thank you, Your Honor. May it please the court. Let me try to answer some of these questions that you've been asking. The way I look at the statute is you've got an administrative proceeding at the International Trade Commission of the Commerce Department under 1673, the dumping law. That proceeding comes to an end, final negative, final affirmative, whatever. You then go into court under 1516A. You're in court, and this is what Congress did, I can't say why they did it. You're in court under 1516A until the final disposition of the court action under C3, which is then remanded by the court. So you're relying on C3?  I believe C3. It's not clear that the government is relying on C3. Pardon me? It's not clear that the government is relying on C3. No, it's not, but I believe, I look at it, the administrative agency's the blue line, the court's the red line, and then you go back to the blue line. So once the court action, and Congress used the word final disposition of an action, you then go back to the agency and you resume your process. And what that means in this case, to answer your question from earlier, is the ITC would finalize its decision on remand. That decision, as you know, you were sort of hinting at, has not really been finalized yet. They made the decision, they have not published it. They have not, so it's not been in the Federal Register. It looks like an ITC opinion, but it's not a Federal Register decision. And I think that's an important point here. They have not gone forward and published it. The ITC would then publish, Congress would publish the anti-dumping order, and we believe, as Judge Musgrave-Below believed, the special rule would kick in, which would, in this very unique case, first one in 30 years, would end up with entries, the liquidation of which have been suspended under the special rule being not subject to dumping duties. But the statute- The problem with the government's argument is that if they don't collect the cash deposits pursuant to this remand order, if we can call it that, there's no way they can go back and get them again, right? Well, so long as, what Congress has done here is- No, no, no. Yes, I believe, in a certain case, they could. In this particular case, no, but whether or not you deposit cash does not determine what happens at liquidation. Liquidation is just stopping customs from taking final action on the entries. I need to be clear about this. Suppose we were to hold that they didn't have to collect cash deposits. There's no way they can go back after the action's over with and impose the cash deposit requirement, and they can't get the money that would have been collected, right? The cash deposit's not the issue. Liquidation is the issue, Your Honor, because let's say the entries had not been liquidated and the cash deposit was zero. You can still go back and assess. Until liquidation, that entry is open to whatever action the government can take under the statute. So cash deposits are, in a way, not that, they're important from an interest- You're saying they could collect the higher duty even if there hadn't been a cash deposit? Yes, yes. What provision authorizes that? If an entry is not liquidated, the liquidation, again, is just holding the entry open. Then the- Suspension of liquidation is holding it open. Pardon me, suspension of liquidation. Suspension is holding it open. Holds it open. Liquidation is the opposite, correct. And then when the administrative proceeding continues, just like in an annual review, the Commerce Department would determine what amount is owed. There are many instances where I have clients that may deposit 1% and have to pay 10% plus interest, or you may deposit 10%, and then maybe there's no dumping duty owed. You get it all back with interest. So you're saying that even if there is no cash deposit, the government can say, the end of the day here, there's material injury. There should have been a duty imposed, and we're going to insist that you pay that duty before we liquidate. They could, but here the special rule applies, which would prevent it. But in a- What special rule? There's a special rule when the ITC finds merely threat of material injury, and when the ITC finds merely threat of material injury, the anti-dumping order is not retroactive. It is only prospective from the date of publication. So basically, they couldn't collect- In this particular instance, but in almost every other instance, because threat of material injuries- Unfortunately for you, we're dealing with this particular- Yes, but this is a much bigger issue that the facts of this specific case, which I think drove the CIT to its unique opinion, caused, and if you can't, you have to look at what Congress said. You can't look at the facts of this case, because if you look at the facts of this case, you would do what the CIT did, in my opinion, which is to say, this doesn't seem like a fair conclusion. Whether or not it's fair, that's up to Congress. We just need to look at the law, and I think the law here is very clear, and I think the court has followed this interpretation of the law. If you look at Timken, you look at Hoseidin- The law is very clear because of C3. I think so. C3 says, when it goes back, at the disposition of the action, not at the decision by the lower court. If there had been no appeal, we wouldn't be here, but there has been, but I do think it's sort of the red line, Mr. Weigel, you've pretty much consumed the time you wanted to save, too. I'll give your side two minutes, and let you decide which of you will respond. Mr. Pickard? Thank you. Good morning, your honors. May it please the court, for the record, I'm Daniel Pickard of Wiley-Rhein here this morning on behalf of the Diamond Sawblade Coalition. The central issue here is to the extent that a party must comply with the CIT determination in the absence of a stay. No, that's not the issue. The issue is whether the order issued by the ITC was a final order which had to be implemented. It doesn't depend on the approval of that order by the Court of International Trade. There's nothing in the statute that says the approval of the order by the Court of International Trade as opposed to the approval at a final appeal has any special significance, right? It's an interesting point, which is exactly what you raised earlier, was what really, what's the importance? Isn't that true? I think you are correct. I think it's that it's the ITC's new determination that triggered the responsibility or the transmission of that to the Department of Commerce that triggered their obligation. Not necessarily the CIT's affirmation of the ITC's new determination. I think that's correct, your honor. And I think, ultimately, that's the central question that this court has to answer, right? If the ITC made a new determination under 1673d and transmitted that to the Department of Commerce, then there was an obligation within seven days to publish an anti-double order. It did not do so, and for the reasons stated in the opinion, the Court of International Trade issued a rate of mandamus compelling it to do so. So could this problem be solved by the ITC saying on the remand, here's what we think the Court of International Trade wants us to do. This order does not become effective until the conclusion of the appeal. Could they do that? I don't know, quite frankly. It's an interesting question. I would be in a position where I was purely speculating upon. I'm not aware of any court decision or regulation that would provide it with that authority, or which would, really, if the ITC said, we're issuing a new determination, but we're doing it under duress from the Court of International Trade remand, does that make it 1673d determination any less of a 1673d determination? I'm not sure, but it's possible that a court could uphold that determination. What we do know is that they didn't do it in this case. So what about the argument under C3? Remand for final disposition. Right, I think it flies in the face of the governing statute, 1673e, which clearly states that once the ITC transmits its determination to the Department of Commerce, the obligation issue, the anti-dumping order, is triggered. The court below addressed this issue in regard to, really, almost a balance of powers. The argument that being, if you subscribe to that argument, then the ITC's determination, really, is a 1516a determination, so really, it's a quasi-judicial, quasi-agency determination, which would mean that you would have to then be willing to believe that the judiciary is really kind of running the agency, and the agency has been divested of its power. I think that's pretty much a stretch. I don't think it really holds water. I think a much more straightforward reading of the cases in the governing statute say that liquidation determinations need a final and conclusive determination, ultimately, by this court, if there's an appeal filed, because of the unique nature of liquidation. It is final and cannot be undone. So in those matters, and that's what Timken's talking about, Hussein's talking about, the cases that the government relies on, which I think is the fatal flaw to their case, those decisions, if the Court of International Trade could affect liquidation, it would essentially frustrate review by this court, and that can't be proper. Let me see if I understand. There's a very unfortunate use, I think a loose use, in the statutory scheme of the term final and disposition and conclusive. Let me see if I understand what your position is with respect to the various uses. You would say in 1673, is it D, the determination of the commission is the commission's own determination without regard to anything that happens later, correct? Yes, absolutely. Okay, and then when we get to 1516 AC3, a final disposition of an action is the decision of the CIT, for example, right? Not the denial of cert, because that's gotta be right in the context of this statute, doesn't it? Because we're talking about disposition consistent with the final disposition of the court. That's not the final, ultimate resolution of the action. This is something that's in the middle, that occurs in the middle of the ongoing action, correct? Correct, Your Honor. I think what Tim can refer to generally is final decisions as compared to final and conclusive, which is when all appeals are brought. Right, okay, but then final and conclusive is at the conclusion of the entire proceeding after the time for cert has run. Absolutely. And that's used, I guess, in one of the other statutes, is it, well, I can't find it right now, but I believe that's it. Right, and I think that's what Tim Kim was trying to talk about in the other, I'm sorry. No, no, go ahead. That when it comes to liquidation issues, you need a final and conclusive determination, because you can't undo liquidation, but that court decisions from the CIT that are short of liquidation must be given immediate legal effect in the absence of a stay, with the exception of liquidation, which can't be undone. And that's really kind of where we're at today. Well, now, there's been a final and conclusive determination in regard to the ITC's determination. Well, I guess we don't know yet, do we? Because we don't know whether cert will be filed. Filed today. Today. I don't have any reason. It's not final and conclusive until tomorrow, if no cert is filed. Well, although, it's a little bit of a tangent, and this court had said in Tim Kim that this court would not opine on whether cert, really, the time period for cert needs to run. But I thought we said in Fujitsu that cert did need to run in order for, right? Correct. So, I suppose, assuming that a petition for cert is not filed today, then yes, then we have a final and conclusive determination. I have no reason to believe that a petition for cert is being filed today. Okay, all right. Do you agree with the government that the case is not moot for the reasons they said? That is as of tomorrow? I think it moots some of their arguments. I don't know fairly if it could be read to moot the entire controversy, because I think the issuance of the writ of mandamus is at least relevant to the starting date for the antidote. Which will affect whether they can collect the higher duty for the order issues. Well, I would think of it in a different way, really, that if the anti-dumping order issues for a period of five years, you can make the argument that this is not completely mooted in that either the anti-dumping order is going to start on November 4th when it was issued, or should you, should this court, pardon me, vacate the writ of mandamus, and if the Department of Commerce then had to reissue the anti-dumping order, then we would have a new start date. A new start date for the collection of the higher duty. Correct. Yeah, so that affects the... Yes, I'm sorry. It does moot, I think, to the certain extent that there are any of the yo-yo arguments that are made for Melamine as far as back and forth, back and forth. Now, assuming that a petition for cert is not filed today, we know definitively the anti-dumping order is going to go forward. None of the yo-yo concerns. To get to brass tacks on this, just to make sure I understand, because I'm having a difficult time following what happens to the cash deposits and whether that pertains in what set of circumstances those end up getting just tossed into the collected liquidated duties, and in what circumstances they don't. In this particular case, would there be a financial difference, depending on whether we say, no, the cash deposits should never have been collected? Oh, absolutely. Yeah, okay. So this case is not going to be moot, regardless of what happens to the merits portion, because there's a financial difference. There is either money coming back, or there's not. Yes, absolutely. This decision has real effects. Are there any other questions I could answer for the court? Our approach has always been relatively straightforward, just to recap that Crystal Raritan, Hoseidin, all the cases that the government has relied upon essentially have to do with liquidation. Liquidation turns on final and conclusive determinations. This matter turns on whether notice was actually given to the Department of Commerce of an affirmative ITC determination. And here, no one's contesting that basic fact, that after the ITC made its affirmative determination, that it transmitted a copy of its determination and a letter of notice to the Department of Commerce, notifying of its new determination. The statute's relatively straightforward. After receiving that notice, there's an obligation to publish within seven days. When the Department of Commerce failed to do so, we petitioned for a writ of mandamus. And that, in your view, for your response to Judge Dyke, would be something that's triggered by the remand determination, not by the CIT's affirmance of the remand determination. Correct? Well, what actually happened in this case, if I remember correctly, is that the ITC waited for its determination to be affirmed by the CIT. It shouldn't have, as I understand your position. And I don't know if it's, frankly, before this court right now, but I think there is, I think that is a more logical interpretation of the statute. Which one? Judge Dyke's? The one suggested by Judge Dyke. Judge Musgrave, all right. At 1673d has to do with the new ITC determination. Does it become a new ITC determination when Judge Musgrave affirms it? No, I think it gives it further support. But I think it becomes a new determination when the ITC reboots, writes up its conclusions of laws and facts, and transmits it. Either way, I think that amounts to, if you want to say that it should have been the ITC's original determination, or after Judge Musgrave affirmed it, either way, the Department of Commerce received notice of a new ITC determination, and it was required to issue its anti-dumping order at that time. And start collecting the cash deposits. Yeah, and start collecting cash deposits because of the position that our clients were in. That they were, at that time, in the absence of cash deposits, they were being injured on a daily basis due to the presence of unfairly priced imports in the marketplace. Thank you, Mr. Picard. Thank you, your honors. We'll give appellants two minutes. Is Ms. Sanchez gonna utilize them? Yes, your honor. First and foremost, cash deposits are not for the benefit of the domestic industry. They benefit the government's ability to collect the revenue that is, that will ultimately be due in this case. And the cash deposits in and of themselves are not the final duty that is due. The Timken notice that we published, that Commerce published, as a result of the notice of the decision not in harmony, states clearly and unequivocally that the duty will be ascertained as of the date of that Timken notice. So this special rule that Mr. Weigel addressed doesn't kick in for purposes of this case. That special rule kicks in in administrative reviews at the ITC, not once a case goes into litigation and the Timken notice is issued. Now I'm confused. Are you disagreeing with Mr. Weigel? Yes, we are. On that special rule, we do disagree with Mr. Weigel. The government. Okay, and so with respect to this particular case, are the cash deposits, is it gonna make a financial difference as to whether these cash deposits were properly collected or not? For the ultimate collection of the revenue, no, because the revenue will be collected based on going back all the way to January of 1990. Of 19, of 2009. I thought you said the opposite originally, that prospectively there's no difference, but that retrospectively there is a difference. If the order were issued tomorrow, it could only be applied to entries after that date, whereas if the order were properly issued, I don't know what it is, two years ago, then it can be applied to the entries that occurred after that date. No, the duties that the government will collect as a result of the trade court's affirmance of the decision of the ITC will be effective on the date of the Timken notice. Any entries that came in as of January of last year are covered, they're protected. I don't understand. If I misspoke before, I apologize. So say you, but both of your other lawyers that are helping us out with this complex case say no. All we have to do is look at Joint Appendix 99 at the Timken notice. It's at page 99 of the Joint Appendix. The language is there. It protects the parties. The government is not, the government is bound by that. That is. Suppose we say that what you call the Timken notice isn't effective to achieve this result. Then the other parties are right about the financial impact, right? If the Timken notice were null and void, yes, then they would be right, but that is not the case. And for purposes of what we hope this court will do, we hope that this court will look at what was Commerce's obligation on the day that the trade court issued the writ of mandamus. The trade court points to no statute. The trade court created the duty that it imposed on Commerce and then imposed it on Commerce, but no statute speaks to the manner in which the trade court ordered Commerce to act. So that is a court-created duty on which the court based the writ of mandamus. That is inappropriate. The Supreme Court doesn't allow it. It is an extraordinary relief that should not have been granted in this case. Thank you, Ms. Sanchez. I think we'll have to liquidate the argument. The issues have been well-explained.